HENRY H. BROWN ET AL. ⎫
            vs.             ⎬   DECEMBER TERM, 1850.
JACOB WATERS ET AL.   ⎭

[USURY—CONTRACTS.]

THE statute against usury cannot be evaded by any shift or device ; and no matter what the form of the transaction may be, the courts will explore the real truth, and if they discover that the object was a loan of money at more than the legal interest, it will be condemned.

A renewal of the usurious contract between the same parties, partakes of the infirmity of the original agreement; but, if the latter is discharged, or is made the consideration of a contract entirely new, as being with a third party, not a party to the original contract, or to the usury paid, or as combining other parties and considerations, and not being a contrivance to evade the statute, the usury laws do not apply.

The Chancellor, in this case, refused to set aside an agreement, made more than eight years after the alleged usurious contract, carried into execution on both sides, and combining other parties and considerations than those in the original contract, and with no proof that it was a contrivance to evade the statute.

It is not the duty of courts to shape the contracts of parties, but to enforce such as the parties themselves make when they are competent to make them, and when no unfairness, fraud, surprise or mistake is shown.

[A bill was filed on the 13th of July, 1847, by Henry D. Brown and Charles A. Waters, for a sale of the real and personal estate of the defendant, Jacob Waters, which was conveyed to them by said Jacob, by a deed dated on the 12th of May, 1846, which, though absolute on its face, is admitted to have been intended as a security for a certain indebtedness in which the grantor then stood to the grantees. Upon this bill, such proceedings were had, that on the 14th of October, 1847, a decree was passed for the sale of the property conveyed by said deed for the payment of the debts of the said Waters, and appointing the complainants trustees for that purpose, and directing them to give the usual notice to creditors to file their claims with the register within four months of the day of sale. A part of the real, and all of the personal, estate was sold by the trustees on the 30th of November, 1847; which sale was

duly reported to the Chancellor on the 14th of December following, who, on the same day, passed the usual order of ratification *nisi*.

On the 16th of February, 1848, Benoni S. Nicols and William F. Howell, the purchasers of the real estate sold by the trustees, filed a petition, objecting to the ratification of the sale, in which they state, that at the time they purchased said land, they were induced to believe, that the title to the same was good ; and, that from the representations made by the trustees at the time of sale, that there would be no difficulty in obtaining a good title, they were induced to become the purchasers ; but, that since the day of sale, they have learned, that a certain Hugh Gelston, of the city of Baltimore, claims to be the owner, in fee simple, of said land, by virtue of a deed of conveyance, made to him by the defendant, Jacob Waters, long prior to the deed to complainants, under which the land was decreed to be sold ; and, that said Gelston was no party to the proceedings which resulted in the decree for a sale. That, as soon as they discovered such defect in the title, they applied to the complainants' counsel, and received an assurance from him, that the deed to Gelston should be released, and a conveyance from him to the trustees should be obtained prior to the ratification of the sale. They, therefore, pray, that the ratification of the sale be suspended until such conveyance should be obtained from Gelston. The deed from Waters to Gelston was dated the 9th of July, 1840, and purported to be an absolute conveyance of the land contained in it for the consideration of $2250, paid by the grantee to the grantor. Afterwards an agreement was entered into between Jacob Waters, the defendant, and the trustees on the one part, and Gelston on the other, that Gelston should receive the sum of $1428 in full, of his claim against the said land, and in order to enable the trustees to convey a good title to the purchasers, should convey said land to the trustees ; and the trustees agreed and did place in the hands of Alexander Randall, Gelston's attorney, for the use of said Gelston, two of the bonds of the purchasers, each for the sum of $552 54, dated the 30th of November, 1847, at one and

two years after date. And, in performance of his part of the agreement, Gelston executed a conveyance of the land to the trustees on the 14th of March, 1848, in consequence whereof, the objections to the ratification of the sale by the purchasers were withdrawn on the 25th of the same month.

The defendant, Jacob Waters, died on the 12th of August, 1849, and letters of administration on his personal estate were granted to Brown, the complainant—no further proceedings in the cause having, in the meantime, occurred. On the 1st of. October, 1849, James W. Waters filed a petition in the cause, complaining of delay in the sale of the lands and settlement up of the trust; and exhibiting a claim against the proceeds of sales already made, or to be made, founded on the following obligation of Jacob Waters, a copy of which was filed with said petition :

"This indenture, made and entered into by Jacob Waters, of Anne Arundel county, Maryland, and James W. Waters, of Campbell county, Georgia, formerly of the same part. In consideration that the said Jacob Waters bought the said James W. Waters' land of him and gave the value of it, notwithstanding Elizabeth Waters, his wife, did not sign the deed ; therefore, the said James W. Waters has given the said Jacob Waters, in a settlement with him for the land, the sum of five hundred dollars; and, in consideration of the above amount, should the said James W. Waters live longer than the said Elizabeth Waters, his wife, or live with each other again, or *live longer than the said Jacob Waters ;* then the said Jacob Waters binds himself, his heirs, administrators, executors or assigns, to pay the said James W. Waters the sum of six hundred dollars, for the use of the five hundred that the said Jacob Waters has had in his possession.

"As witness my hand and seal this twenty-sixth day of October, eighteen hundred and forty-four.

JACOB WATERS, (Seal.)

Witness, C. A. WATERS."

The trustees answered this petition on the 15th of November following, and excuse themselves of the delay in settling up the

trust, by stating that they have been unable to sell the land, although great efforts had been made by them to do so. The answer also denies the justice of the claim, set up by the petitioner, and insists that the intention of the parties to it was, that the payment of this sum of $600, was to be made to the petitioner in the event of the said Jacob Waters and the petitioner surviving the said Elizabeth Waters, the divorced wife of the petitioner, and not otherwise—in other words, that this sum was retained as the value of the contingent right of dower of the said Elizabeth in the lands of her husband, if any such right she had. On the same day, the trustees filed a report of the sales of the remainder of the real estate, and the first sales were finally ratified on the 8th of December, 1849.

The decree which had abated by reason of the death of the defendant, Jacob Waters, was revived by an order dated the 7th of June, 1850, and the second sale, were finally ratified on the 25th of the following month.

The questions arising as to the claim of James W. Waters, were argued on notes, by F. H. Stockett, for the petitioner, and A. Randall, for the respondents, and on the 24th of July, 1850, the Chancellor delivered the following opinion upon this claim.]

THE CHANCELLOR:

The only question which I am now asked to decide, arises upon the sealed contract of Jacob Waters, bearing date on the 26th of October, 1844, in which, upon certain alternative contingencies, he obliges himself to pay to James W. Waters, the sum of six hundred dollars. One of these contingencies has occurred, to wit: the death of Jacob Waters, living James W. Waters. It is not for the court to shape the contracts of parties but to enforce such as they themselves make, when they are competent to make them, and when no unfairness, fraud or surprise, or mistake is shown.

Nothing of the kind appears, or is even pretended in this case; and though the court may regard the contract as somewhat a singular one, it can see no ground for refusing to give

it efficacy. I am, therefore, of opinion that James W. Waters is entitled to receive the sum mentioned in the contract, from the estate of Jacob Waters.

---

[On the 7th of June, 1850, Henry H. Brown, as the administrator of Jacob Waters, deceased, and Anne Elizabeth Waters, the only child and heir at law of said Jacob, by the said Brown, as her next friend, filed their petition in this cause, in which they allege and charge that the claim of Gelston against the deceased originated in the following manner: That on or about the 9th of July, 1840, Jacob Waters applied to Gelston to loan him $600 for the term of two years, at the rate of *eighteen per cent. per annum*, and for the purpose of carrying out said loan, Waters executed the deed of that date, above referred to, to the said Gelston, and Waters took a lease from Gelston of the land thereby conveyed for two years at $108 per annum. The petition admits that an agreement was subsequently made upon the sale of the land, that Gelston should receive the sum of $1428 in full for his claim out of the proceeds of sale, and that for the purpose of paying that sum, the bonds of the purchasers were placed in the hands of A. Randall, Esq. for said Gelston's use, and that all of said sum had been paid over to him except the sum of $339 30, then in the hands of said Randall, but charges that the original agreement, and all the conveyances between Waters and Gelston were usurious, and therefore void, and that Gelston had already received the whole of the principal and legal interest on account of said loan, and a large sum besides. The petition then prays for an injunction restraining said Randall from paying over, and Gelston from receiving, said sum of $339 30, and that the same, together with all that Gelston had received over and above his claim of $600, with legal interest thereon, be brought into court by said Randall and Gelston. The injunction was granted, and the petition was set down for hearing on the 2d of October following.

On the 3d of September, Gelston filed his answer to this petition, in which he admits that Waters did, on or about the time charged in the petition, call on him for a loan of money on his

farm, in Anne Arundel county, but that he does not recollect the exact amount thereof—that upon such application, respondent informed Waters that he would not loan the amount asked for by him, and refused peremptorily to do so, but stated to Waters that if he felt disposed to sell said lands, respondent would purchase the same. The answer further states, that Waters finally agreed to sell the land to respondent for the sum of $600 cash, and to take a lease for two years upon said farm; and that the deed and lease were accordingly executed. The answer denies that the transaction was a loan at all, but an absolute sale, and that the respondent could not, therefore, have charged Waters at the rate of *eighteen per cent. per annum*, on the amount of the sum paid to him for the said land, and charges that no such agreement was ever entered into between Waters and respondent, that the transaction was a *bona fide* and absolute sale for a valuable consideration. The answer further relies upon the agreement subsequently made by the trustees and said Jacob Waters with respondent, and insists that but for such agreement he never would have consented to a decree and a sale under it, and that it was the duty of those interested in the matter to have made objections, if any they had, against his claim before said agreement was entered into, and prays that the injunction may be dissolved. Various testimony was taken on both sides, which it is not material to state, and the cause was argued on notes by the solicitors of the parties; and on the 3d of December, 1850, the Chancellor delivered the following opinion:]

THE CHANCELLOR:

This case is brought before the court, upon a petition of Henry H. Brown, administrator of Jacob Waters, and Ann E. Waters, the heir at law of said Jacob, filed on the 7th of June last, and the answer thereto of Hugh Gelston, filed on the 3d of September following. The object of the petition, which charges that a transaction between the said Waters and Gelston, of the 9th of July, 1840, was usurious, and that the latter had actually received more than the principal and legal interest

on the amount said to have been loaned by him to Waters, was to compel Gelston to repay the excess, and A. Randall, Esq. his solicitor, to bring into court an additional sum of money, then alleged to be in his hands, and which was likewise claimed by Gelston. Gelston in his answer to the petition, denies the charge of usury, and the facts, as shown by the record and admissions of the parties, are as follows:

In July, 1847, a bill was filed by Brown, the petitioner, and Charles A. Waters, upon an instrument, which, though an absolute conveyance upon its face, from Jacob Waters to the complainants, was admitted to be a mortgage, and which bore date in 1846.

Upon this bill, to which the said Waters and others were parties, a decree passed on the 14th of October following, for the sale of the property, to pay the debts of Waters, according to their priorities, and appointing the complainants trustees for the purpose. A sale was accordingly made on the 30th of November, of the same year, and being reported by the trustees, one of the purchasers filed objections to its ratification, upon the ground, that the property purchased by him had been conveyed by Jacob Waters to Hugh Gelston, as early as July, 1840, and the latter being no party to the proceedings, the title would be defective.

In this state of things, it was agreed by all parties, Jacob Waters being then living, that Gelston should convey the property to the trustees, to enable them to give a good title to the purchaser, and that in consideration thereof, the trustees agreed to allow Gelston, out of the trust fund, the sum of $1428, and having paid or secured to him the payment of that sum, he, together with his wife, on the 14th day of March, 1848, executed a conveyance to the trustees, in conformity with the agreement, and, thereupon, on the 25th of the same month and year, the objections to the sale were withdrawn and it was ratified.

And the question now is, whether upon this petition, filed more than two years afterwards, and after the death of Jacob Waters, this court should go into an examination of the original transaction, between him and Gelston, of July, 1840, and dis-

regarding every thing which has taken place subsequently, shall decide the controversy with reference to that transaction alone.

It is supposed to be quite clear that but for the agreement of March, 1848, by which a certain sum was to be paid Gelston, for the transfer of his title, the sale which the trustees had made to the objecting purchaser, could not have been ratified; and there certainly would be much apparent injustice, after procuring from Gelston an execution of the contract, and availing themselves of all the benefits thereby inuring to them from such execution, in permitting the parties thus benefited, to escape from the performance of the stipulations on their part, upon the ground, that the title which Gelston had acquired from Waters, was contaminated with usury.

Jacob Waters was living when the agreement of 1848 was made, and it is not alleged, and it is presumed it could not with truth be alleged, that he was not fully apprised of all the facts now relied on; nor is it stated or shown in any way, that any of the parties interested were not, at the time of this agreement, entirely cognizant of the circumstances attending the transaction of 1840, between Jacob Waters and Gelston, or that they were surprised or duped into an improvident agreement. But having reaped the fruits of that agreement, into which they do not pretend they were entrapped by any artifice of Gelston, they now seek to deprive him of the consideration which they agreed he should receive, and for which alone he made the contract. He at that time held the legal title, and until he parted with it by his own act, or it should be shown to be vicious by some competent legal tribunal, he must be regarded as entitled to all the advantages resulting from its possession; and it appears to me, it is not consonant to justice, that the parties who have induced him to part with it for a consideration, shall enjoy the benefit of the transfer, and at the same time, take or withhold the consideration from him.

The decisions in this state and elsewhere, unquestionably prove, that the statute against usury shall not be evaded by any shift or device, and that no matter what the form of the transaction, the courts will explore the real truth, and if they dis-

cover that the object was a loan of money, at more than the legal interest, it will be condemned. Such was the judgment in 3 *Har. & Johns.*, 409, and such will be found to be the principle in numerous cases. But the question here is, not whether the original transaction of 1840, between Gelston and Jacob Waters was usurious, (for upon that question I do not mean to decide,) but whether a new and independent agreement made eight years afterwards, carried into execution on both sides, shall be opened, and visited with the consequences of usury, because the original agreement, which has been cancelled or superseded by the new agreement, was tainted with usury. The case of *Bearce* vs. *Bartow*, 9 *Mass. Rep.*, 45, is a strong authority against any such attempt. A renewal of the usurious contract between the same parties partakes of the infirmity of the original agreement, but if the latter is discharged, or is made the consideration of a contract entirely new, as being with a third party, not a party to the original contract or to the usury paid or reserved upon it, "or as combining other parties and considerations, and not being a contrivance to evade the statute, the usury laws do not apply."

Now, I think, it cannot be maintained, that the agreement of 1848 was a contrivance to evade the statute, and it unquestionably does combine other parties and considerations, and it did certainly discharge the original agreement of 1840.

I am, therefore, of opinion, that the relief prayed by the petition filed in this case cannot be granted.

Petition dismissed with costs.

CORNELIUS McLEAN for Petitioners.
A. RANDALL for Respondent.